Good morning everyone. We have two cases on the calendar this morning and the first one we hear is Minor v. Delaware River and Bay Authority, appellate number 21-2491. May it please the court, your honors. William F. Cook with the firm of Brown and Connery on behalf of the Delaware River and Bay Authority. I'd respectfully reserve two minutes for rebuttal. For three independent reasons, the trial court improperly denied summary judgment to the individual defendants of the Delaware River and Bay Authority. First, under precedent established in going back to 1981, this court's decision in Ness, Mr. Minor was policymaking on the undisputed facts identified by the district. Could we could we back up? There's a there's an anterior question. Are we supposed to be deciding this as a matter of fact or law? So the Rosenthal line of cases calls policymaking a status, a question of fact. So don't get to the underlying specifics of the fact. The general issue, this is a matter of fact, isn't it? I respectfully disagree, your honor. Okay, then explain how we should read Rosenthal. Well, you go back to the Ness case, your honor, going back to 1981, which was Judge Gibbons's case, where this court held that a city solicitor was In that case, your honor, the Third Circuit adopted a functional analysis. Okay, so Ness's reading of Rosenthal is that it's generally a matter of fact, but as with summary judgment, occasionally we can decide as a matter of law. So but that doesn't abridge Rosenthal's general rule that's a matter of fact. And then Furlong reiterated the question of plaintiff's status as a policymaker vellum on as one of fact. And then Boyle summarized it. So the way Boyle summarized it was the question of whether an employee falls with an L.L. Brownlee exception is generally one of fact, citing Furlong and Rosenthal. However, summary judgment may be appropriate in certain circumstances under Ness. Well, your honor, a couple things. First of all, the Boyle case, there was no qualifying immunity even raised in that matter. And that's something I'll get to separately. But Rosenthal's, this is a quote, where there is evidence to support the employee's claim that he does not make policy. He is entitled to a full trial on that issue. The issue, your honor, and again, I would respectfully go back to Ness and even Brown versus Trench, which affirmed it. Circuit Judge Hunter held that we need to look at what the function of the office was, the function of the office involved and not the actual past duties. Okay. But the first question is, is this a matter of fact or of law? And these cases seem to say in the mine run of cases, it's fact. Now, there are some offices, city solicitor, you've got some codes and statutes and regs. Maybe in a few of these, we could decide it is a matter of law. But generally, it's a matter of fact. I would disagree, your honor, in the sense that there is no established precedent going back in this circuit which states that these cases regularly are decided. How do we read Rosenthal? We review Rosenthal in the way that this court has read it, all the way going back Ness, Brown, Waskovich, and Peters, which holds that the issue is whether the employee in question, the functional duties of the employee carried a great deal of responsibility and whether or not that... And that is all going to be based on a bunch of facts. Now, once in a while, you've got city solicitors. City solicitors, you have regs, you have statutes, maybe those tell you it's a matter of law. But I don't understand what is left of Rosenthal on your reading. Rosenthal, and then our reading of it in Furlong and Boyle is, yeah, you can grant summary judgment sometimes. Maybe you're saying you fit within this, but it seems like we've adopted this rule that normally we treat this as a fact. It's an agglomeration of facts. There's no dispute, Your Honor, that facts are, of course, relevant. We have to look at what was the position. We have to look at what that record has established on summary judgment. But to say that it then, to take it a step further and to say that as a matter of course, each of these cases are so factually intense that we must therefore deny summary judgment again as a matter of course, that I respectfully submit over-interprets that case. And of course, this circuit has regularly granted dismissal on policymaking grounds where the position in question, every single case you could look at, well. Well, you say regularly, Burns, Assaf, Amore, Boyle. No, no, no, no, no. We're not going to grant qualified immunity at this feed because there are issues of fact apropos to what my those cases are applying the Rosenthal type line, Ness, et cetera. And then they go back to Burns and Boyle. And then when you look at the evidence in this case that the district court identified that Minor had lost several responsibilities outlined in his job description, he directly supervised when he started seven people. He was down to one, could not hire a like reading minutes at a meeting. Then the court, Chair Hogan downplayed the role of the Minor saying that there wasn't much to the job. Explained that he wanted to combine it with airport director position to make it a real job, quote unquote. He did very little and the position was a luxury job. Boy, that's a whole lot of evidence that what this person did was not policymaking. The issue, Your Honor, I would respectfully submit is that that analysis veers too far into issues of what the actual duties of the position were. Aren't we stuck with this? These are what the court has said from Hogan. I could quibble, Your Honor, about whether that was really truly what Mr. Hogan testified, but granting it for acceptance of argument. And you're right. You could quibble with it. That's why it's an issue of fact, isn't it? Well, not really, Your Honor, in the sense that when you come back and look at the fundamental facts that are not in dispute in this matter is that Mr. Minor was an appointed officer who His position is so important that it's referenced by statute. Well, they had to change the resolution in order for him to serve at the pleasure, right? He was tenured and then he was detenued. I would disagree in the sense that he was ever tenured, Your Honor. Well, they initiated a resolution. There were two resolutions. Right. One was to detenue the position and the second was to terminate him, correct? The second resolution was to separate him and to confirm what was established, that he was never tenured at all with the Delaware Rim Bay Authority. You asked us to look at the function and the description. The executive director's job description speaks about policymaking. The deputy executive director's position does not. That shows a reason why the district courts, among others, chose to not grant summary judgment on the qualified immunity. Because even accepting your view that we should blind ourselves to what There is a difference in the job description. Do you agree with that? I would submit, Your Honor, it should be examined in the context of the statute that the New Jersey legislature has passed for the position, which makes it You told us to look at the job description, the function. And then we looked at the job description, you would agree, does not say policymaking for the deputy executive director, correct? Those words, Your Honor, whether he's policymaking, I agree, Your Honor. It is not in the job description. I can't debate that. But when you read that job description, Judge, there is no dispute as to the responsibility and the authority. This is an employee who has the authority to speak on behalf of the Delaware Rim Bay Authority. That means in the record that perhaps he did not, correct? Well, he has that authority. He is the liaison with state and local officials. We adopt your view then, that means that a job description could shield the hiring authority to permit it to fire whomever they want and as long as they utter the right job description, correct? And I don't think that that's necessarily out of line with the cases that I've cited, Judge, because the issue is what is that person empowered to do? Where have we heard, entertained an interlocutory appeal or said that this is interlocutory appealable, where we're busy arguing and disagreeing about what weight to give to these particular facts? I mean, we haven't done it. There's a non-partisan opinion going the other way. The Seventh Circuit says it's normally not amenable. It normally, matter of fact, the Fifth Circuit treats it as a matter of fact. So you're asking us to break ground here. Why should we break ground and treat this as interlocutory appealable? I don't know, Your Honor, if it's really breaking ground. Then tell us the precedent that has already broken the ground for you. I'll cite the Seventh Circuit case of Moss v. Martin, which was 614 F3rd 707. Circuit Judge Wood held and granted or affirmed the grand summary judgment on qualified immunity because in Circuit Judge Wood's words, given the uncertainty that litigants encounter in this somewhat murky area of the law, it is difficult for a plaintiff to avoid a qualified immunity defense in a case of first impression. That is an affirmance of a grant of summary judgment. So it's not interlocutory. Now tell me about where a denial of summary judgment has been interlocutorily reviewed. Then it's not a final judgment yet. I would cite the Curtis case, Your Honor. This was out of the Eighth Circuit in 2020, 963 F3rd 777, where the Eighth Circuit reversed a denial of qualified immunity. Issue was whether a sheriff was entitled to qualified immunity on a First Amendment claim brought by deputy sheriffs. The Eighth Circuit held in that matter that summary judgment was wrongfully denied and reversed the denial of qualified immunity. Separate case out of the Eleventh Circuit in 2013, where the Eleventh Circuit reversed denial of qualified immunity, held that an employer is qualified, I'm sorry, entitled to qualified immunity brought by a discharge superintendent. And actually further held in that matter that the issue is not a factual splicing of what a, you know, the job description or how that holds, but we have to look at a categorical approach which is in line with the function. Okay. So there's a circuit split here. Why should we take that side in the circuit split? It's what the sister circuits have held, Your Honor. I would further cite the Williams case. Okay. You've got citations. What's the reasoning? The reasoning is that we don't get into the weeds of the particular employees, maybe I lost a direct report or maybe I didn't have as much power as I did before because I didn't have the budgeting or the resources. Why shouldn't we let the trial play out? The normal course is to let this go to a trial where the arguments you're making are ones that are perfectly well suited for jury. But reasoning, why cut this short at this stage? Because of qualified immunity, Your Honor, the defense is lost. And this has been established, long established in this circuit, Williams case being an example. If this case, if we are allowing these cases to regularly go to trial as a matter of course, there's no more qualified immunity. It's just not happening. Qualified immunity, the intent of that is not to subject a official to a trial where the law is not sufficiently clear. And at the very least here, even if we could debate whether or not Mr. Minor on this set has been identified, whether or not he was policymaking, we certainly cannot disagree that as a matter of qualified immunity, it has not been clearly established that an individual in this position is second in command at a major transportation agency is not policymaking. I would like to turn to the clearly established then. You would like the law to have clearly established that someone who is the deputy executive director of the DRBA or a like agency is immune, which would mean that the first firing is immune from any kind of suit. Where in our case law would such a specific articulation of the clearly established law be supported? I recognize what Your Honor is saying. And there are cases, of course, that say you can't identify every single job description as a matter of case law cannot go that way. But the issue in qualified immunity, I would submit, Your Honor, is whether a reasonable commissioner would have believed that Mr. Minor is policymaking. And under the record that was established here, there was no analysis. And to conclude with this, Judge, our cases also require under the Williams case that an individualized analysis be conducted. We'll get to the individualized analysis in a second. I'm looking for you to tell me who falls in the Elrod Branty exception. Because would you agree that the law is clearly established that you cannot fire a public employee for their political beliefs? As a general principle, absolutely, Your Honor. And do you agree there's an exception often called the Elrod Branty exception? Correct. Okay. Who falls into that? And please don't say the deputy executive director. Right. We need guideposts. Let's look at the cases, Your Honor, that have held a position as policymaking. Your Honor already cited the Ness case, city solicitor's policymaking. Brown case, Judge Hunter's case out of 1986, an assistant director of public information. But what you're doing is reciting job positions. And what I'm asking for are criteria. The criteria, it goes to whether or not the employee had meaningful input into decision making. Okay. So whether the employee had meaningful input into the decision making. Apropos of what my colleagues have been asking you, how would one be able to determine if one has meaningfully input into decision making unless they look at the facts? Well, but the facts are undisputed, Your Honor. Mr. Meyer was second in command. He sat in on every single what they call the chairman. That is a fact that's undisputed. Isn't the word you're looking for policy? Is somebody in effect making policy for the DRBA? Isn't that the theme? I would argue, Your Honor, yes, but also has meaningful input into that. I would just fine tune it just slightly. Has meaningful input at a very high level, which this employee did. And where, is it disputed, isn't it disputed that he did not make policy or did make policy? Either way. Isn't it disputed by the other side? It is. And didn't the court bring out some of the issues that make it look like he is not involved in making policy? It did. And then why should we enter into that thicket and make a factual determination here? Because again, going back to Ness, Judge, it's not whether or not the actual duties have changed over time. And I would respectfully submit this is where the district court erred into, well, even though the job description said one thing, his actual duties were different. That's not the analysis. Can I ask you about burden of proof here? Do you bear the burden of establishing that your clients merited qualified immunity? If there's a silence or disagreement, that tie goes to the runner in terms of letting the case go forward, correct?  You have the burden. Okay. Very well. I do have the burden. But I would respectfully submit again here, even if we were to debate on the line of cases and whether the case is sufficiently safe, whether the deputy executive, not, you know, whether or not this position falls within the Ness line as opposed to the Furlong's older Byrne line, at the very least, and the Supreme Court has made clear most recently in Wesby and other cases, that the issue is whether a DRPA commissioner would have been so off the mark and so unreasonable in believing that Mr. Minor was policymaking. And I would respect... We'll get you back up on rebuttal. Okay. Pardon me? We'll get you back up on rebuttal. Okay. Yes. Thank you very much. Good morning. Good morning. May it please the Court. I'm Richard Pescatore. I present the plaintiff, I believe, Frank Minor. Counsel. I'm going to veer off my script I have and jump into this lively discussion that you brought up. Before doing so, you can't escape the fact that Frank Minor was a permanent, tenured employee that worked at the DRPA for about a decade before he was fired, weeks after being named on Governor Murphy's transition team. That's a major fact. And the district court judge did an analysis under Rosenthal and Boyle. It looked like the analysis related to Chairman Hogan, mostly, and not necessarily to any of the other commissioners. That's true. Not specifically, except for... There's only one three-sentence total in there with respect to the... That's true, except for one, and that would be Commissioner McCann, who was of record saying in her deposition that he was not a policymaker. Did the district court rely on that stated fact? Not necessarily. Because our ability to review the facts has to be based on what the facts stated by the district court. No, they relied upon the facts that were brought out by his honor. So can we really rely on McCann's statement, is my question. Well, if we're going to then jump to the issue of what do we do with these other commissioners... I think that's what... That's going to come... Jim was asking, what do we do about the others? Right. What do we do? I mean, certainly it's an unusual circumstance. I didn't take the depositions of each one of these commissioners. We have all the commissioners voting, however, to terminate this tenured, permanent, full-time position. But does our law require, including pursuant to Grant v. City of Pittsburgh, that there should have been individualized decision-making as to each of the commissioners, like was done with Mr. Hogan? I don't think at this stage. I think, as his honor is saying, that's something that can be raised at trial. They have the burden. They still have the burden on the qualified immunity. That's something they can raise at trial and offer proofs with regard to whether or not they were part of that process. Now, let's ask about burden. Our case law is actually kind of conflicted about this. Are you sure that they have the burden? What's your authority here for saying, like, no, in fact, you're not policymaking? Absolutely not sure, your honor. To be honest with you, I'm not. I don't know the answer to that, other than you have... It's an unique circumstance. You have these other commissioners voting and following the leaders, so to speak. And you have testimony in the record about, in the record statement of facts about Chairman Lowe, a board member, saying that we simply go along with what New Jersey was doing. But it's not... There was a host of facts upon which to base the denial of the summary judgment. And counsel, in referring to the test, said it veers too far. Well, that's not the test. The test isn't if the district court judge veered too far. The test is in Scott, and it's blatantly incorrect. That's the test. The test for what? The test to show that the summary judgment application in his review of the facts under Rosenthal and Boyle was so off the mark, so blatantly incorrect that... I thought we were reviewing DeNovo. Right? This is a denial of summary judgment. Summary judgment. Yes, this is denial of summary judgment. Our review would be DeNovo. It would be. It would be. But in this case, and you don't need to certainly go out of the Third Circuit. You don't need to go to the Seventh Circuit. We know in Asaf, the language... It was a grant of summary judgment. Right, but the language there in Asaf was that there was plenty of guidance within the Third Circuit on the issues here in this case. How do you distinguish your case from Peters, which involved the Secretary of the Delaware River Port Authority? I don't think Peters is close. And I don't think Peters is close. I don't think Brown is close. I don't think Diaz is close. Can you tell us why specifically? I'll tell you why specifically. Because in that case... Which one? The case you asked me about, Peters. Okay. That involved an agency or an authority that is not like the Delaware River Port Authority, which is a bi-State agency. It's a bi-State agency where the governor... The Delaware River Port Authority has New Jersey ties, yes? Yes, it does. And only three of the commissioners can be of the same political party. That's not the same in the Peters case, in that authority, where they could all be of the same. In fact, that party in Peters is elected to a two-year term. And Frank Miner's not elected. The Secretary position is an elected position? Yeah, it was an elected position. So... Elected by the commissioners or elected by whom? Who are the voters for this position? I believe the commissioners. And also on that point, you cannot... You could serve as a member of the commission and be employed. You can't do that at the DRBA. And in Peters, it had much more authority, much more of the type of facts that are considered in the Galley case, where you go through an analysis of whether or not someone is a policy maker. So I distinguish Peters in that respect, that it's a different agency. She was elected, two-year term. We believe it's elected by the commissioners. Didn't Mr. Miner have to be approved by the commissioners? Because to us, didn't we see a resolution in the record approving his hiring? Back in 2009. I'm sorry, I didn't hear. The judge said back in 2009. In 2009, he was appointed by the governor and approved by the commissioners. And you're saying the Secretary of the Delaware River Port Authority has obtained that position differently? Well, the Delaware River, I don't think it's a port authority. It's another entity. But I believe that person is elected to the position. And I'm not 100% sure of the election process, but it's not the same as it is in the DRBA. And most importantly, it's not a bipartisan agency. And I think that's significant. How do you describe the clearly established law here? Put more specifically, who fails to meet the Albronte... Who meets the Albronte exception? Well, as you noted, that exception is when you have someone whose political affiliation is going to interfere with their ability to perform their job. And a policymaker, that's someone who can be terminated. He does not fit that mold whatsoever. Even though his responsibilities as pursuant to his position description included being an advisor on economic development, major projects that are of interest to the agency. Yes. And there's other cases. The person from Manitowoc, the Secretary, I think they're substituted in for someone whose description said she was a policymaker. And even just because the language said policymaker, it didn't make them a policymaker for that particular person, the Manitowoc case. But in this case, the job description is, as is pointed out, different than the job description for the executive director, which has it in there. Actually says policymaker. And one of the exhibits in the record is the report from Weinstein. And it's one of the exhibits indicating... Look at the last page of that exhibit. It says in there, in 2015, go ahead and review your manual. And if you want to change that position, go ahead. And didn't. So that's a sort of a form over substance argument. But when it comes to form over substance, the description does not say policy. It could say policy. Didn't say policy. How do you respond to your adversary's point who says we should be really focused on the functions of the job, not how it was actually performed? Well, I'm really, in a way, okay with that in a sense that he couldn't hire a fire. In fact, he couldn't speak, as counsel said, for the authority. In fact, I believe one occasion when he was going to go to an event, he was said, don't go. You'll be hit with insubordination. He doesn't do budget. Okay. He doesn't oversee 80,000 people like we saw in Busa. He doesn't have those elements in his job. Help us to figure out, though, how we turn this into a rule for the next case. Obviously, you want your client to win. But you know, Ness, Ness has this common sense approach. Like, we're talking about a city solicitor. You can look at the statutes. You look at the regs. You understand the mayor has to have political confidence that the city solicitor is on board even though there's some non-policy stuff the solicitor does, maybe a lot. So help us to come up with the rule that explains for these next cases. Like, will some of them be interlocutorially appealable? Will some of them get qualified immunity? Your friend is right. The qualified immunity means an immunity from suit. So some of these cases we ought to be able to pick up at an early stage. But how do we know which ones when the other side is always going to make arguments like you do? Oh, he was minor. They never trusted him, et cetera. Well, it's an easy task. But I think it fits with what we have in Wren. We have the Wren case versus Lucerne. I think this is on point with that. So that's guidance, if you will. But it has to be resolved on a case-by-case basis, really. And there's a difference between somebody who's political. You started to talk about solicitors, mayors. And someone who is a policymaker. He is not a policymaker. You can't have your cake and eat it, too. If he's going to be a policymaker, he's fair game. I agree. What are the indicators of a policymaker? What facts or considerations or job description components should the court consider? Well, let's start by putting it in the job description. That's a good place to start. And you had the opportunity to do so multiple times. He didn't do that. So that's a start. And then let's see that he's actually substantively involved in meetings and participating and not excluded and doesn't go into meetings and doesn't even know what they're talking about because they exclude him about what's going on. We would go beyond the four corners of the job description and look what's actually happening during the course of his employment. You look at it globally. It has to be a global analysis. It has to be such that you look at the job description. That's where you start, okay? And you look at what he actually does in substance. And in here, in this particular case, again, the judge below, in doing the Rosenthal-Boyle looking at, and it says, look at the testimony and admissions. And when he looked at that, he said it's a fact issue. And it's for the jury to decide. And that hasn't changed. What do we do with, I would like to follow up on what Judge Ambrose was asking about in terms of individualized findings. The opinion reflects findings concerning the activities of Mr. Hogan. But where in that opinion does it fulfill the other grant obligations of individualized findings? Well, to me, that's the question that's, for my position, most difficult to deal with. Because it's, what do you do with these other commissioners that didn't specifically, and there wasn't specific findings asked to them? That's the question. Well, you know what? They voted to dismiss a permanent tenured employee. And they didn't have anything in front of them to make that decision. Other than what we have is Hogan's conduct. And I think that establishes, to answer your question directly, a prima facie case against the other commissioners. Again, having the ability at the time of trial to rebut and indicate that they should be entitled to qualified immunity. Do we have to ask the district court to do that in the first instance? Or do we have the authority to do that? Because you're asking us to make a finding. And unfortunately, we'd all like to be, but we're not in the finding business. I think my position is that that is something that is reserved for a trial. That is something, because there's a prima facie case, because these commissioners voted to terminate a tenured permanent employee. And the only thing we have to go, the only other evidence involved is this abrupt termination. He gets no warning. He's told on the day he's going to be terminated, he's going to be terminated. There's no evaluation that Hogan is looking at. And then you have the temporal proximity with regard to being named on the transition team. And then the veto situation. Do we have evidence that the other commissioners would have known about the temporal proximity between his being named on the transition team and the termination? Is there anything in the record from which we could infer each of those commissioners was aware of those events? Not specifically, but I think it can be reasonably, you know, reasonably advanced as a proposition that they knew or reasonably should have known. I mean, there's articles, there's a political article, which incidentally, Senator Sweeney didn't take any issue with, definitely indicated he was roiled, using his words, with regard to the move. So should they know or reasonably should know as reasonable commissioners? Yes, I think so. I think there's a prima facie case against them. And we go from there. That's how it's to be handled. It's the only way I can figure out how it can be handled with regard to these other individual commissioners other than Hogan and perhaps McCann. Thank you. Thank you, Your Honors. All right. Thank you. Just two things, Your Honor. First of all, if this turns into a case-by-case analysis, as my colleague referenced, that's midnight for qualified immunity. There will no longer be qualified immunity in these cases. If we're defining the standard at such a granular level of factual analysis, no reasonable commissioner could ever know going forward what the standard is. We're having a very lively debate about what's possible. Immunity obviously is something that's been, as you know as well or better than I do, discussed as to whether it's in balance or out of balance. Take your point of view. But it also has, in order to get out of suit free card qualified immunity, you have to do certain things. And if there are, there have to be, in a summary judgment like this, there have to be facts that clearly support you and essentially none that support the other side. And we keep telling you there are things stated, for example, by Chairman Hogan that indicate that this person was a permanent, tenured employee. How do we, because we're not in the fact-finding business, as Judge Schwartz just noted, how do we get around that? The same testimony, Your Honor. He was adamant as to what he believed. It's his belief, Judge. It's his reasonable belief that Mr. Minor was policy-making. It's not as if Mr. Hogan did not articulate a basis as to why he believed Mr. Minor was policy-making, and he did. But it certainly has a prerogative to disbelieve such testimony based on the surrounding circumstances. It can't be that you get summary judgment based on one person saying, I thought he was policy-maker. Well, this goes, I think, Your Honor, to the issue of the individualized analysis on which I'll conclude. That was not done. We do have the burden to show qualified immunity. I know counsel recognized he did not take their depositions, but the record was clear. Sworn interrogatory responses. They didn't even know what Mr. Minor's political position was. Let me ask you this. I'm glad you're ending with that, because that's where I'd like to end with you, too. Sure. The criticism in the briefing to us of the district court for not making those individualized findings, right? Absolutely. What I didn't see in your briefing, not yours personally, the client's briefing, and the briefing to the district court is an individualized analysis for each of the individual officers, I mean, and commissioners. So did you guys forfeit the ability to complain by not giving us your own view of the individualized analysis when you have the burden of proof? Joint appendix, Your Honor, 170 to 173. This was paragraphs 103 to 107 of our statement on the suit of material facts. I'm talking about briefing. I'm not talking about that. I'm talking about briefing. To us. Yeah, I didn't see anything in briefing to us for explaining that. I'm aware of what's in the joint appendix, and we appreciate the comprehensiveness. It was in our briefing under Williams and Grant, Judge. It was in our briefing in reference to that, that the district court's analysis was relegated to a two-paragraph discussion where there was no analysis. But you didn't give us any either, right? There was no development of that other than a criticism of the court and doesn't explain an individualized analysis would have demonstrated fill in the blank. I would argue, Your Honor, we did incorporate our arguments from summary judgment, which were part of the record. And based on that and the absence of anything from the plaintiff. Our circuit rules say just saying we hereby incorporate is not enough to preserve something. It's a self-evident and self-executing obligation by the district court to conduct this analysis. It's jurisdictional as to the issue of qualified immunity, and it needs to be done under Juchowski, under Grant. The district court has to undertake that analysis in order to evaluate the issue. We did raise qualified immunity below. And as I said, we did cite the facts as to each commission. We thank you both, counsel, for your very helpful briefing and excellent arguments. And the panel will take the matter under advisement.